UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD WERSHE, JR.,

       Plaintiff,

v.

THOMAS COMBS, *et al.*,

       Defendant.

Case No.  1:12-CV-1375

Hon. Gordon J. Quist

## ORDER ADOPTING REPORT AND RECOMMENDATION

Plaintiff, Richard Wershe, is a state prisoner currently serving a paroleable life sentence for drug crimes he committed when he was seventeen years old. Wershe has been eligible for parole for well over a decade, but the Michigan Parole Board (the Parole Board) has not granted him parole. Wershe sued two Parole Board members, Thomas Combs and Barbara Sampson, asserting that they violated Wershe's rights under the Eighth Amendment and the Due Process Clause. The Court initially dismissed Wershe's complaint, and Wershe appealed. The Sixth Circuit affirmed the Court's dismissal of Plaintiff's due process claim, but vacated the dismissal of Wershe's Eighth Amendment claim and remanded for this Court to consider the impact of *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2010). *Wershe v. Combs*, 763 F.3d 500, 502 (6th Cir. 2014).

On January 5, 2016, Magistrate Judge Ray Kent issued a Report and Recommendation (R & R) in which he recommended that the Court grant Defendants' motion for summary judgment on Wershe's Eighth Amendment claim. Wershe has filed objections, and Defendants have filed a response to those objections. After conducting a de novo review of the R & R, Wershe's objections, Defendants' response, and the record, the Court agrees with the magistrate judge's conclusion that Defendants are entitled to summary judgment.

*Background*

The factual background of this case is thoroughly laid out in the R & R, and the Court will not repeat it here. The Court notes, however, a few salient facts. Wershe became eligible for parole in 2000. (ECF No. 20-3 at ¶5.) The Parole Board held a hearing in 2003, and thereafter decided to take no interest in the case. (*Id.* at ¶8.) In 2006—while still incarcerated—Wershe pled guilty to racketeering and conspiracy to commit racketeering in Florida. In 2007, the Parole Board again decided to take no action on Wershe's case.

In 2012, the Parole Board conducted a file review of Wershe's case, and again determined that it had no interest in taking any action. (*Id.* at ¶10.) Sampson, who conducted the file review, completed a case summary report at that time. (ECF No. 1-2 at PageID.31.) In a section about Wershe's personal history, Sampson noted that Wershe had been convicted of racketeering while incarcerated, and noted that it was "troubling that prison was not enough to curb his criminal behavior," despite the number of years he had served. (*Id.*)[1] In an affidavit filed with her motion for summary judgment, Sampson stated that the 2006 conviction "was not reassuring" because it demonstrated that, although Wershe had "served a considerable amount of time in prison," he "had matured into an adult still willing to engage in criminal behavior." (ECF No. 20-3 at ¶10.) Wershe's next parole interview is scheduled for 2017.

*Discussion*

1.  Relevant Precedent

In 2011, the Supreme Court decided *Graham*, which held that the Eighth Amendment prohibits the imposition of a life sentence without parole for juvenile offenders who commit

---

[1] The case summary report includes the phrase "not used as reason" after the description of Wershe's 2006 conviction. Sampson explained that such phrase is printed whenever free form text is typed into the Parole Board Information System. (ECF No. 20-3 at Page ID.118.) Sampson further explained that the free form text is reviewed and considered by the Parole Board during the voting process. (*Id.*)

2

nonhomicide offenses. *Graham*, 560 U.S. at 74, 130 S. Ct. at 2030. The Court explained that "[l]ife without parole is an especially harsh punishment for a juvenile," and that "none of the goals of penal sanctions that have been recognized as legitimate—retribution, deterrence, incapacitation, and rehabilitation—provides an adequate justification" for a life without parole sentence for a juvenile nonhomicide offender. *Id.* at 70-71, 130 S. Ct. at 2028 (internal citations omitted). Underlying the Court's decision was its finding that "because juveniles have lessened culpability they are less deserving of the most severe punishments." *Id.* at 68, 130 S. Ct. at 2027.

The Court made clear, however, that its decision did not guarantee that a juvenile offender would be released in his lifetime. *Id.* at 75, 120 S. Ct. at 2030. The Court explained:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. . . . The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

*Id.* In explaining the need for a categorical rule prohibiting life without parole sentences, the Court noted that such a rule "gives all juvenile nonhomicide offenders a chance to demonstrate maturity and reform." *Id.* at 79, 103 S. Ct. at 2032.

Two years after deciding *Graham*, the Supreme Court held that mandatory life without parole sentencing schemes for juveniles convicted of homicide violate the Eighth Amendment. *Miller v. Alabama*, 132 S. Ct. 2455 (2012). The Court noted that *Graham* had established that "children are constitutionally different from adults for purposes of sentencing" for several reasons: (1) "children have a lack of maturity and an underdeveloped sense of responsibility leading to

3

recklessness, impulsivity, and heedless risk-taking"; (2) "children are more vulnerable to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings" ; and (3) "a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievable depravity." *Id.* at 2464 (internal quotation marks and alterations omitted).

Finally, the Supreme Court held earlier this year that the rule announced in *Miller* applies retroactively. *See Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). The Court noted that states need not resentence juveniles who were sentenced to life without the possibility of parole, however, but could instead simply make them eligible for parole. *Id.* at 736. The Court explained:

> Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition—that children who commit even heinous crimes are capable of change.

*Id.* at 736.

2.  Wershe's Eighth Amendment Claim

The magistrate judge concluded that the decision in *Graham* does not apply to Wershe because he is not facing a sentence of life without the possibility of parole. In support of this conclusion, the magistrate judge cited a previous case from the Sixth Circuit rejecting a habeas claim from a state inmate sentenced to consecutive fixed terms totaling 89 years imprisonment. *Bunch v. Smith*, 685 F.3d 546, 547 (6th Cir. 2012). In that case, the court noted that *Graham* prohibits the imposition of life without parole sentences, and that, because the petitioner was not sentenced to life without parole, his sentence did not violate clearly established federal law. *Id.* at 552-53.

4

The Court cannot say with certainty that *Graham* does not apply to Wershe merely because his sentence is technically one that gives him the possibility of parole. As the Sixth Circuit noted in its previous order, this is an issue of first impression in this circuit. Moreover, the Sixth Circuit's decision in *Bunch* is distinguishable because it concerned a fixed term sentence, rather than a paroleable life sentence, and it applied the "clearly established federal law" standard of the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), which is not applicable in this case.

Moreover, district courts in other circuits have held that *Graham*'s requirement that states offer juvenile offenders a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," *Graham*, 560 U.S. at 75, 130 S. Ct. at 2030, extends to juveniles that are sentenced to life with the possibility of parole. *Hayden v. Keller*, No. 5:10-CT-3123-BO, 2015 WL 5773634, at *8 (E.D.N.C. Sept. 25, 2015); *Greiman v. Hodges*, 79 F. Supp. 3d 933, 943 (S.D. Iowa 2015). As a North Carolina district court explained, "[i]f a juvenile offender's life sentence, while ostensibly labeled as one 'with parole,' is the functional equivalent of a life sentence without parole, then the State has denied that offender the 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' that the Eighth Amendment demands." *Hayden*, 2015 WL 5773634, at *8. Similarly, an Iowa district court concluded that because a juvenile offender may only prove increased maturity and rehabilitation after a sentence is imposed, the responsibility for ensuring that an offender "receives his constitutionally mandated 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' lies squarely with [the parole board]." *Greiman*, 79 F. Supp. 3d at 943.

The Court finds the decisions from those other district courts persuasive. *Graham* imposed a categorical rule that prohibits states from deciding, at the time of sentencing, that a juvenile

offender will necessarily spend the rest of his life in prison.  The Court's discussion of a meaningful opportunity to obtain release, however, suggests that the decision imposes some requirements after sentencing as well.  Nonetheless, the Court need not decide whether *Graham* imposes requirements on a parole board in this case.  Even if the Court assumes that *Graham* requires the State to provide Wershe with a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation, the State has satisfied such requirement.

Although Wershe argues that "there has been no demonstrated consideration by Defendants to [Wershe's] youth at the time of his sentence," and that the Board has never addressed Wershe's "maturity and rehabilitation," (ECF No. 24 at Page ID.394-395), the evidence demonstrates otherwise.  In her affidavit, Sampson stated that the Parole Board considered whether Wershe had matured, and concluded that he had not grown out of his willingness to engage in criminal behavior.  Sampson's statement is confirmed by the case summary report she completed in 20012, which stated that Wershe "was a high profile drug dealer at age 17.  Although he has served a significant number of years[,] it is troubling that prison was not enough to curb his criminal behavior." (ECF No. 1-2 at Page ID.31.)  It goes on to describe Wershe's 2006 conviction, and notes that he committed the offenses while incarcerated.  (*Id.*)  The 2012 case summary report, as well as Sampson's affidavit, demonstrate that the Parole Board took account of Wershe's age at the time of his offense and considered whether he had matured out of any criminal inclinations.

Wershe offers several other reasons that the Parole Board denied him a meaningful opportunity for parole.  He argues, for instance, that the Parole Board should have explained the reasoning for its decisions to him, that it should not have focused so much on his 2006 conviction, and that it should have allowed him to explain the circumstances of that conviction.  The nature of the relief Wershe seeks reflects those criticisms of the parole process.  Wershe requests that the

6

Court require the Parole Board to conduct a full public hearing not subject to a "no interest" designation by the Parole Board, conduct a subsequent hearing every three years, and provide Wershe with a list of reasons for its decision as well as a list of expectations for Wershe to complete prior to the next hearing. Wershe further requests that the Court institute a review process for the Parole Board's decisions.

Wershe's arguments, as well as the relief he requests, reflect a misunderstanding of the requirements of *Graham*. In holding that juvenile nonhomicide offenders must be granted "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," the Court emphasized that "[i]t is for the State, in the first instance, to explore the means and mechanisms for compliance[,]" and that the State was not required to release offenders. *Graham*, 560 U.S. at 75, 130 S. Ct. at 2030. Thus, *Graham* does not allow courts to undertake a full review of the State's parole procedures and substitute its own judgment for the State's, as Wershe suggests. Rather, *Graham* requires that the State provide offenders with a meaningful opportunity to demonstrate that they are entitled to release based on maturity and rehabilitation, and gives the State primary responsibility for determining how to provide such opportunity. That *Graham* was not intended to upend parole systems is confirmed by the Court's later decision in *Montgomery*, which noted that making juvenile lifers eligible for parole would not "impose an onerous burden" on states. *Montgomery*, 136 S. Ct. at 736.

Furthermore, those courts that have held that a state's parole system did not satisfy *Graham*'s requirements focused on the lack of opportunity for an offender to demonstrate that he had matured and changed. *See Hayden*, 2015 WL 5773634, at *8; *Greiman*, 79 F. Supp. 3d at 944. For instance, in holding that the North Carolina parole review process did not comply with *Graham*, the *Hayes* court noted that the case summaries provided to the parole commission did not contain information

7

about an offender's status as a juvenile offender or specific information about maturity or rehabilitation efforts. *Hayden*, 2015 WL 5773634, at *8. Similarly, the court *Greiman* held that the plaintiff's complaint stated a claim under *Graham* because it alleged that the parole board did not take into account his youth at the time of the offense and instead considered only the seriousness of his offense. *Greiman*, 79 F. Supp. 3d at 943.

In contrast, there is undisputed evidence that, during its most recent review of Wershe's file, the Parole Board considered Wershe's age at the time of his offense and whether he had matured or rehabilitated. Relying on the 2006 conviction, the Parole Board concluded that Wershe had not demonstrated sufficient maturation or rehabilitation to warrant release. It is not for this Court to determine whether the Parole's Board's procedures reflect best practices, or whether the Parole Board could institute procedures that provide juvenile offenders with better opportunities to obtain release. Rather, *Graham* instructs that it is for the State, in the first instance, to determine how to provide juvenile offenders with a meaningful opportunity for release. Because the Parole Board provided that opportunity to Wershe, it did violate the Eighth Amendment in this case.

*Conclusion*

Defendants have provided undisputed evidence that, in determining whether to grant Wershe parole, they considered whether he had demonstrated maturity and rehabilitation. Thus, to the extent that the requirements of *Graham* apply to Wershe, they were satisfied. The Court emphasizes, however, that its analysis is limited to the facts of this case. The Court offers no opinions as to whether the procedures employed by the Parole Board generally comport with *Graham*.

Therefore,

**IT IS HEREBY ORDERED** that the Report and Recommendation of the Magistrate Judge filed January 5, 2016 (ECF No. 23), is **ADOPTED** as to its conclusion that Defendants are entitled to summary judgment.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 19) is **GRANTED**.

This case is concluded.

A separate judgment will issue.


Dated:  March 31, 2016                                              /s/ Gordon J. Quist
                                                                                  GORDON J. QUIST
                                                                        UNITED STATES DISTRICT JUDGE